Filed 2/27/24  P. v. Metoyer CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUKE METOYER,<br><br>    Defendant and Appellant. | F084541<br><br>(Super. Ct. No. BF185895A)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order and a judgment of the Superior Court of Kern County. Chad A. Louie and Michael G. Bush, Judges.[†]

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Before Hill, P. J., Meehan, J. and Snauffer, J.

[†]    Judge Louie ruled on defendant's motion for mental health diversion; Judge Bush presided over all other hearings pertinent to this appeal.

-ooOoo-

Defendant Luke Metoyer stole items from a shed in June 2021 and punched the shed's owner in the face. A month later, defendant stole items from someone else's vehicle. After the trial court denied defendant's motion for mental health diversion, a jury convicted him of burglary and misdemeanor counts of battery and petty theft. The trial court denied defendant's motion to strike his prior serious felony conviction and sentenced him to six years for the burglary conviction and concurrent terms of 180 days for each of the battery and petty theft convictions.

On appeal, defendant argues that the trial court abused its discretion in denying his motion for mental health diversion and requests a conditional remand to permit the trial court to apply the correct standard in analyzing his motion. Defendant also challenges the trial court's imposition of an upper term sentence based upon uncertified records of his criminal history. The People argue that defendant forfeited his objection to use of uncertified records to impose an upper term sentence and that both trial court errors were harmless. We agree that defendant forfeited his claim that the trial court erred in imposing an upper term sentence but conditionally remand for the trial court to reconsider defendant's motion using recent changes to statutory requirements for mental health diversion.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The District Attorney of Kern County filed an amended information on February 16, 2022, charging defendant with burglary (Pen. Code, § 460, subd. (b);[2] counts 1, 3), misdemeanor battery (§ 243, subd. (a); count 2), misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364; count 4), vandalism

---

[1]   The facts underlying the specific charges alleged are not relevant to the two issues raised in this appeal, and therefore, will not be presented in detail here.

[2]   Undesignated statutory references are to the Penal Code.

(§ 594, subd. (b)(1); count 5),[3] and misdemeanor petty theft (§ 488; count 6). The amended information further alleged that defendant had a prior serious felony conviction (§ 667, subd. (a)) as to count 3 and a prior "strike" conviction within the meaning of the "Three Strikes" law (currently codified at §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) as to counts 1 and 3. Defendant pleaded not guilty and denied the allegations.

Defendant filed a motion for mental health diversion on February 10, 2022. The trial court took the matter under submission after the hearing and issued a written order denying the motion on February 24, 2022.

After a five-day trial, a jury convicted defendant on May 27, 2022, of burglary (§ 460, subd. (b); count 1) and misdemeanor counts of battery (§ 243, subd. (a); count 2) and petty theft (§ 488; count 6). The jury acquitted defendant of misdemeanor vandalism (§ 594, subd. (b)(1); count 5), and the trial court declared a mistrial as to the charges of burglary (§ 460, subd. (b); count 3) and misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364; count 4). The trial court dismissed the prior serious felony conviction enhancement as to count 3 upon motion of the prosecutor, and defendant waived his right to a jury trial regarding the prior strike conviction allegation. The trial court held a bifurcated court trial and found true that defendant had a prior strike conviction based on certified records from the Department of Corrections and Rehabilitation relating to defendant's 2017 second degree robbery conviction, for which he was sentenced to a prison term of three years.[4]

---

[3]    The trial court granted the prosecutor's oral motion on May 18, 2022, to amend the amended information by interlineation to allege that the amount of damage involved in the offense was less than $400 and reduced count 5 to a misdemeanor.

[4]    The prosecutor's exhibits also included a certified record of defendant's 2020 conviction for second degree burglary and bringing alcohol or drugs into a prison, for which he was sentenced to a prison term of four years.

The trial court denied defendant's motion to strike his prior conviction pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and sentenced defendant to the upper term of six years (three years doubled pursuant to § 667, subd. (e)) as to count 1, and concurrent terms of 180 days in jail as to counts 2 and 6. The trial court also ordered defendant to pay victim restitution (§ 1202.4, subd. (f)(2)), a $300 restitution fine (§ 1202.4, subd. (b)), a suspended $300 parole revocation restitution fine (§ 1202.45), a $10 crime prevention fee (§ 1202.5), $120 in court operations assessments (§ 1465.8), and $90 in criminal conviction assessments (Gov. Code, § 70373). The trial court granted the prosecutor's motion to dismiss counts 3 and 4 for which the jury failed to reach a verdict.

Defendant filed a timely notice of appeal on June 28, 2022.

## DISCUSSION

**I.    This matter must be conditionally remanded to permit the trial court to evaluate defendant's motion for mental health diversion in light of recent amendments to section 1001.36.**

### A.    Background

On February 10, 2022, defendant filed a motion for the trial court to determine his eligibility for mental health diversion pursuant to former section 1001.36. In support of the motion, defendant submitted a psychological evaluation prepared by Dr. Michael Musacco. Dr. Musacco concluded that defendant met the criteria for diagnoses included in posttraumatic stress, major depressive, antisocial personality, and drug use disorders. Dr. Musacco's evaluation included a review of: (1) defendant's medical history that included several head injuries and loss of consciousness; (2) an interview with defendant in which he reported nightmares, flashbacks and psychological distress stemming from abuse as a child; and (3) nine years of custodial mental health records, including prior diagnoses of posttraumatic stress disorder, substance abuse, and depression.

4.

Dr. Musacco concluded that defendant met the criteria for posttraumatic stress, major depressive, anti-social personality, and drug use disorders and, "[a]s such, it appears that he possesses a mental illness and would benefit from psychiatric treatment." Dr. Musacco explained that posttraumatic stress disorder and depression would "respond to traditional psychiatric treatment," and general mental health counseling would help manage defendant's drug use disorder and psychiatric symptoms by developing prosocial coping skills "which will be necessary in order for him to maintain offense-free functioning in the future."

The trial court held a hearing on defendant's former section 1001.36 motion on February 17, 2022. During the hearing, defendant agreed to waive his right to a speedy trial in the event the trial court found defendant eligible and suitable for mental health diversion. The trial court took the motion under submission.

The trial court denied defendant's motion on February 24, 2022, stating: "The court has reviewed and considered the information provided by the parties, which includes a Declaration of Counsel and a Psychological Evaluation report by Dr. Musacco. It is not clear based on the totality of the information submitted that the defendant's mental disorder was a significant factor in the commission of the charged offenses. The request for mental health diversion is denied."

### B. Applicable Law and Standard of Review

At the time the trial court ruled on defendant's motion, former section 1001.36, subdivision (b)(1) authorized a trial court to grant pretrial diversion, in its discretion, if defendant met all of the following criteria: (A) defendant suffers from a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including posttraumatic stress disorder as evidenced by the diagnosis of a qualified mental health expert; (B) the court is satisfied that the defendant's mental disorder was a significant fact in the commission of the offense; (C) in the opinion of the

5.

qualified mental health expert, defendant's symptoms of the mental disorder that motivated his criminal behavior would respond to treatment; (D) the defendant consents to diversion and waives his right to a speedy trial; (E) defendant agrees to comply with treatment as a condition to diversion; and (F) the court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Stats. 2019, ch. 497, § 203, eff. Jan. 1, 2020.)

The most recent amendments to section 1001.36 were made by Senate Bill No. 1223 (2021–2022 Reg. Sess.) and went into effect on January 1, 2023, after defendant filed this appeal. (Stats. 2022, ch. 735, § 1.) The Legislature agreed with a recommendation to "simplify the procedural process for obtaining diversion by presuming that a defendant's diagnosed 'mental disorder' has a connection to their offense" and permit the court to deny diversion if the People rebutted the presumption. (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1223 (2021–2022 Reg. Sess.) as amended June 23, 2022, p. 6.) Section 1001.36, subdivision (b)(1)(2) now provides that a defendant is eligible for mental health diversion if (1) the defendant presents evidence that in the last five years they have been diagnosed by a qualified mental health expert with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, and (2) the defendant's mental disorder was a significant factor in the commission of the charged offense. As to the second criteria, section 1001.36, subdivision (b)(2) now provides: "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense."

If a defendant satisfies the eligibility requirements in section 1001.36, subdivision (b), the court then must consider whether the defendant is suitable for diversion based on the criteria set forth in section 1001.36, subdivision (c), the criteria

that was set forth in former section 1001.36, subdivision (b)(1)(C)–(F).  (See Stats. 2019, ch. 497, § 203.)  The court, in its discretion, may order the defendant to diversion if it finds the defendant both eligible and suitable.  (§ 1001.36, subd. (a).)  Thus, a diversion order is expressly discretionary with the court, even when all of the criteria are met.  (§1001.36, subd. (a) ["the court may, in its discretion" grant pretrial diversion if the defendant satisfies eligibility and the court determines the defendant is suitable].)  A trial court abuses its discretion if it bases its decision on an incorrect legal standard.  (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

> ### C.     Analysis

Defendant argues, and the People concede, that section 1001.36, as amended by Statutes 2022, chapter 735, section 1, applies retroactively to his case.  However, the People argue that we need not remand this matter because, while defendant would otherwise be entitled to a remand to permit the trial court to apply the new standard regarding his *eligibility* for mental health diversion, the trial court's failure to do so is harmless because defendant's motion failed to provide a prima facie case that he was *suitable* for mental health diversion.  We agree that we must remand this matter in light of amendments to section 1001.36 but disagree that defendant's motion was insufficient as a matter of law to establish his suitability for mental health diversion.

Defendant is entitled to the court's informed discretion on his motion for mental health diversion.  (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [addressing court's sentencing discretion].)  The trial court denied defendant's motion because the "totality of the information submitted" by defendant failed to clearly establish that "defendant's mental disorder was a significant factor in the commission of the charged offenses."  However, section 1001.36 now provides that the "court *shall find* that the defendant's mental disorder was a significant factor in the commission of the offense *unless* there is clear and convincing evidence that it was not a motivating factor, causal

factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2), italics added.) The trial court, therefore, was required to presume that defendant's mental disorder was a significant factor in the crime unless rebutted by the prosecution. Here, the trial court understandably did not apply the presumption and clear and convincing evidentiary burden now in section 1001.36.

A court unaware of the scope of its discretionary powers " 'can no more exercise that "informed discretion" than one whose [decision] is or may have been based on misinformation regarding a material aspect of a defendant's record.' " (*People v. Gutierrez, supra*, 58 Cal.4th at p. 1391.) Under these circumstances, the proper remedy is to remand "unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Ibid.*) The People argue that the trial court's decision would be the same because defendant's motion clearly established that he was not *suitable* for mental health diversion. However, we decline to conclude on this record that the trial court would clearly reach the same conclusions about eligibility or suitability under the new law. (See, e.g., *ibid.*)

Section 1001.36, subdivision (c) provides that a defendant is suitable for pretrial diversion if four criteria are met. As to suitability, defendant's motion included Dr. Musacco's opinion that defendant "possesses a mental illness and would benefit from psychiatric treatment." (See § 1001.36, subd. (c)(1) ["In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment."].) During the hearing on defendant's motion, defendant waived his right to speedy trial should the trial court find him eligible for diversion. (See § 1001.36, subd. (c)(2) ["[t]he defendant consents to diversion and waives the defendant's right to a speedy trial"].) Defendant's motion also included the declaration of his attorney that indicated defendant desired mental health treatment and agreed to participate if the trial court found him

suitable.  (See § 1001.36, subd. (c)(3) ["[t]he defendant agrees to comply with treatment as a condition of diversion"].)  As to the final criteria, "defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community," and "[t]he court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate."  (§ 1001.36, subd. (c)(4).)  Section 1170.18, subdivision (c) defines " 'unreasonable risk of danger to public safety' " as "an unreasonable risk that [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667".[5]  Defendant has never committed a violent felony as set forth in section 667, subdivision (e)(2)(C)(iv), and we cannot conclude that he poses an unreasonable risk to public safety as a matter of law.

The matter must be conditionally remanded for the trial court to reevaluate defendant's motion for mental health diversion pursuant to section 1001.36, as amended by Statutes 2022, chapter 735, section 1.  We express no view concerning the proper resolution of defendant's motion, whether defendant satisfies the eligibility or suitability factors, nor how the trial court should exercise its discretion on remand.

---

[5]     The offenses listed in section 667, subdivision (e)(2)(C)(iv) are commonly referred to as "super strikes" and include:  (1) sexually violent offenses; (2) several enumerated sexual offenses involving minors; (3) any homicide offense; (4) solicitation to commit murder; (5) assault with a machinegun on a peace officer or firefighter; (6) possession of a weapon of mass destruction; and (7) any serious or violent felony offense punishable in California by life imprisonment or death.

**II. Defendant forfeited his argument that the trial court erred in sentencing him to an upper term sentence based upon the probation report's description of his criminal history.**

**A. Background**

The probation report described defendant's criminal history as obtained from the databases of the California Justice Information Services, the California Identification and Investigation Bureau, the Federal Bureau of Identification, and the Department of Motor Vehicles and lists defendant's identification numbers for each agency. According to the probation report, defendant's adult record began in May 1997, when he was convicted of petty theft (§ 488), and while on probation for that offense, was convicted of misdemeanor vandalism (§ 594). Defendant was thereafter convicted of petty theft and petty theft with a prior conviction (§§ 488, 666) five additional times between 1997 and 2016 (although the felony convictions were reduced to misdemeanors in 2015), and a sixth time in 2019. Defendant was convicted in 2006 and 2016 with receiving stolen property (§ 496, subd. (a)) and violated parole for the 2006 conviction three times.

Between 1997 and 2012, defendant was convicted eight times of misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364). Between 2003 and 2009, defendant was convicted six times of felony possession of a controlled substance (Health & Saf. Code, § 11350), but all the convictions were reduced to misdemeanors in 2018. Defendant was convicted of misdemeanor trespassing (§ 602, subd. (m)) three times between 2012 and 2016 and shoplifting (§ 459.5), tampering with a vehicle (Veh. Code, § 10852), and resisting a police officer (§ 148, subd. (a)(1)) in 2016.

Defendant was convicted of second degree burglary (§ 460, subd. (b)) in 1997, 2013, and 2015.[6] He was convicted of burglary (§ 459) in 2000 and 2001 and sentenced

---

[6] As to the 1997 conviction, defendant violated his probation and was sentenced to two years prison in 1998. The 1997 and 2013 convictions were reduced to misdemeanors in 2015.

to 16 months in prison for each conviction.  Defendant was sentenced to two years in prison in 2004 for carrying a concealed dirk or dagger (former § 12020, subd. (a)(4)).[7] He was also convicted of escaping (§ 4532, subd. (b)) in 2015 and sentenced to eight months in prison after he violated probation.

In 2017, defendant was convicted of second degree robbery (§ 212.5, subd. (c)) and sentenced to three years in prison.  This conviction was alleged as both the prior strike conviction enhancement and the prior serious felony conviction enhancement in this case.  While on parole in 2019, defendant committed second degree burglary (§ 460, subd. (b)) and was convicted and sentenced to four years in prison on May 28, 2020.

The prosecutor provided the trial court with a certified copy of the abstract of judgment for this 2020 conviction and a certified copy of defendant's chronological and movement history while in prison from the Department of Corrections and Rehabilitation. According to these records, defendant was admitted to custody in 2018 for his robbery conviction, paroled on June 13, 2019, returned from parole on May 28, 2020 (the date defendant was sentenced as to the 2020 second degree burglary conviction), and commenced postrelease community supervision on April 5, 2021.  Defendant committed the instant offenses on June 1, 2021, and July 2, 2021.[8]

The probation report noted no circumstances in mitigation and recommended the upper term because (1) defendant's prior convictions as an adult were numerous, (2) defendant had served eight prior prison terms, (3) defendant was on misdemeanor probation and postrelease community supervision when the crime was committed, and

<hr />

Defendant was sentenced to two years prison for his 2015 conviction and violated his postrelease community supervision four times between 2016 and 2018.

[7]    Effective in 2012, section 12020, subdivision (a)(4) was renumbered with no substantive change and is now section 21310.  (Stats. 2010, ch. 711, § 6.)

[8]    The jury did not reach a verdict as to counts 3 and 4, burglary and possession of controlled substance paraphernalia, offenses alleged to have occurred on May 29, 2021.

(4) defendant's prior performance on misdemeanor probation, felony probation, mandatory supervision, postrelease community supervision, and parole was unsatisfactory. The probation report noted that the circumstances in aggravation were based solely on defendant's prior record of conviction and "pursuant to [section] 1170[, subdivision ](b) (3) …, the court may consider the defendant's prior convictions in the selection of the upper term for the crime, but not the enhancements, without being pled and proven."

Defendant filed a motion to dismiss his prior strike conviction. At the sentencing hearing on June 28, 2022, defense counsel argued that the trial court should dismiss the prior conviction and sentence defendant to the middle term sentence of four years. The prosecutor opposed the motion and asked the trial court to impose an upper term sentence in light of defendant's "extensive criminal record, and much of that criminal record occurred while he's either on probation or parole, and that occurred on this case when he was both on probation and mandatory supervision when he committed these acts." Defense counsel argued that no aggravating circumstances had been alleged (referring to allegations in the information) and "the mid-term is where we start."

The trial court responded, "I think I can consider his record, though, can't I? This [is] one of the most extensive records I have ever seen in my many years, and the strike is relatively new. Based on that, I'm going to deny the request to grant a *Romero* motion." (Italics added.) Defense counsel did not respond, and the trial court sentenced defendant to the upper term of six years.

### B.      Applicable Law and Standard of Review

The trial court sentenced defendant to the upper term for burglary. Defendant argues that the matter must be remanded for a new sentencing hearing because the court abused its discretion and " 'transgress[ed] the confines of the applicable principles of

law,' specifically section 1170, subdivision (b)(3)" in imposing the upper term based upon defendant's uncertified criminal history.[9]

Section 1170, subdivision (b) delineates the trial court's authority to impose one of three statutory terms of imprisonment, known as the lower, middle, or upper term, by making the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist. (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2), eff. Jan. 1, 2022.) The trial court may impose an upper term sentence only where there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying all of the aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or a trial court if the defendant has consented to a court trial. (§ 1170, subd. (b)(2).) The trial court, "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) The court must "set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b)(5).)

Therefore, if the court's sentencing decision violated section 1170, subdivision (b), we must remand for resentencing unless defendant forfeited the error by failing to object or the error was harmless. Our Supreme Court is currently considering the prejudice standard for errors under section 1170, subdivision (b). (See *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.) Appellate courts are divided on the appropriate standard for demonstrating

---

[9] Defendant does not argue that the trial court's selection of the upper term violated his right to trial by jury under the Sixth and Fourteenth Amendments to the United States Constitution and has only argued that the trial court abused its discretion by relying upon uncertified conviction records.

prejudice. (Compare *People v. Flores* (2022) 75 Cal.App.5th 495 with *People v. Lopez* (2022) 78 Cal.App.5th 459, *People v. Dunn* (2022) 81 Cal.App.5th 394, review granted Oct. 12, 2022, S275655, *People v. Zabelle* (2022) 80 Cal.App.5th 1098, & *People v. Falcon* (2023) 92 Cal.App.5th 911, review granted Sept. 13, 2023, S281252.) Because we agree that defendant forfeited this error, we do not reach the People's argument that the error was harmless.

### C. Analysis

Even if the trial court abused its discretion by relying on the probation report's uncertified listing of defendant's criminal history, defendant forfeited this argument by not objecting when he was sentenced.

" 'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial. [Citation.] The rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons .…" ' " (*People v. Scott* (2015) 61 Cal.4th 363, 406.)

Defendant was sentenced after the January 1, 2022 amendments to section 1170 came into effect. (See Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2), eff. Jan. 1, 2022.) When the prosecution asked the court to sentence defendant to an upper term (as recommended in the probation report), defense counsel reminded the court that no aggravating circumstances had been alleged, apparently a reference to section 1170, subdivision (b)(2), which provides that the facts underlying all aggravating circumstances must be stipulated to by the defendant or found true beyond a reasonable doubt by a jury (or a trial court if the defendant has consented to a court trial). The trial court responded to defense counsel's comment by stating, "I think I can consider his record, though."

Section 1170, subdivision (b)(3) permits a court to "consider the defendant's prior convictions in determining sentencing … without submitting the prior convictions to a jury," so long as the conviction records have been certified. The trial court's statement did not include the limitation of relying upon only certified conviction records, and defense counsel never corrected the trial court's statement that it could rely upon defendant's criminal history in finding aggravating circumstances.

As defendant argues and the People concede, the probation report does not meet the statutory requirements of a certified record of conviction under section 1170, subdivision (b)(3). However, defense counsel did not object to the trial court's reliance upon the probation report's listing of defendant's criminal history or to the absence of certified records establishing defendant's other convictions, nor did counsel argue that the probation report contained any errors relating to defendant's criminal history.

Defendant recognizes that appellate courts generally only review matters objected to below (see *People v. Saunders* (1993) 5 Cal.4th 580, 589–590) but argues that "[i]n a criminal case, the objection will be deemed preserved if, despite inadequate phrasing, the record shows that the court understood the issue presented." (*People v. Scott* (1978) 21 Cal.3d 284, 290.)

We reject defendant's argument that despite counsel's phrasing of the objection, the trial court understood the issue presented. (See *People v. Scott*, *supra*, 21 Cal.3d at p. 290.) In *Scott*, the defendant failed to object to admission of evidence based upon constitutional grounds, but the trial court fully considered the constitutional arguments anyway. (*Ibid*.) In the instant case, however, defense counsel objected that no aggravating circumstances had been alleged and that the midterm sentence was "where we start." The trial court's response here indicates that it did not understand defendant's objection to extend to its reliance upon circumstances related to defendant's criminal history as set forth in the probation report and without additional certified records.

Neither the trial court nor the parties ever discussed whether certified conviction records were necessary to support the aggravated circumstances.

In failing to object to the adequacy of the evidence of defendant's criminal history in the trial court, defendant has forfeited the issue on appeal. " 'Claims of error relating to sentences "which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner" are waived on appeal if not first raised in the trial court.' " (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218, italics omitted.)

Although defendant does not claim any other exception to the forfeiture rule, we note that the claimed error in the present case does not fit either the definition of an unauthorized sentence or the rationale for this exception to the forfeiture rule. Under section 1170, subdivision (b), an upper term may be imposed if an aggravating circumstance is based upon a certified record of a prior conviction. Where the upper term is not supported by one or more aggravating factors established by this standard, the remedy is a remand for resentencing. Although the previously imposed upper term cannot stand, the trial court on remand can again impose the upper term if at least one aggravating factor is properly established by admission, finding beyond a reasonable doubt, or certified record of conviction and the trial court exercises its discretion in accordance with section 1170, subdivision (b)(2). (See *People v. Lopez*, *supra*, 78 Cal.App.5th at p. 468 [remand for exercise of discretion where § 1170 was amended subsequent to the defendant's sentencing; absent stipulation by the defendant, People may elect to prove aggravating factors beyond a reasonable doubt or accept resentencing on record as it stands].) Thus, the upper term is not a sentence that "could not lawfully be imposed under any circumstance in the particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 354.)

Defendant argues that we should address the merits of his argument to forestall a claim of ineffective assistance of counsel. However, on this record, we are unable to conclude either that defense counsel should have objected or that a failure to object

prejudiced defendant because the record fails to show the probation report's recitation of his criminal history was incorrect. Defense counsel may have reasonably believed that obtaining certified copies of defendant's other convictions would not have changed his criminal history. (See, e.g., *People v. Price* (1991) 1 Cal.4th 324, 387 [defense counsel does not render ineffective assistance of counsel by declining to make objections that counsel reasonably determines would be futile].) And without any showing of error as to defendant's listed criminal history, we cannot find defendant was prejudiced by counsel's failure to object.

As such, defendant forfeited any challenge on appeal to the trial court's imposition of an upper term sentence based upon his uncertified criminal history as set forth in the probation report.

## DISPOSITION

The order denying defendant's motion for mental health diversion is reversed and the judgment is conditionally reversed and remanded for reconsideration of defendant's motion under section 1001.36, as amended by Senate Bill No. 1223 (2021–2022 Reg. Sess.). (Stats. 2022, ch. 735, § 1.) We express no view concerning whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible. If the trial court finds that mental health diversion is appropriate in light of amended section 1001.36, the court shall grant the motion and order diversion. If defendant successfully completes diversion, the court shall dismiss the criminal charges. However, if the court determines that mental health diversion is not appropriate, or if the court orders a program of diversion but defendant fails to complete it successfully, the court shall reinstate the judgment.

17.